People v Cowan (2019 NY Slip Op 53936)





People v Cowan


2019 NY Slip Op 53936


Decided on November 27, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: November 27, 2019

109345

[*1]The People of the State of New York, Respondent,
v
Michael Cowan, Appellant.

Calendar Date: October 9, 2019

Before: Garry, P.J., Mulvey, Devine and Aarons, JJ.


Aaron A. Louridas, Delmar, for appellant.
Palmer J. Pelella, Special Prosecutor, Owego, for respondent.

Palmer J. Pelella, Special Prosecutor, Owego, for respondent.



Garry, P.J.
Appeal from a judgment of the County Court of Broome County (Cawley Jr., J.), rendered October 3, 2014, upon a verdict convicting defendant of the crimes of criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fourth degree and the violation of unlawful possession of marihuana.
In February 2012, a confidential informant (hereinafter CI) told the Broome County Sheriff's Department that defendant and Marcus Jackson were planning to travel together by bus from New York City to Broome County to sell cocaine. Members of the Broome County Task Force [FN1] obtained a search warrant, detained defendant and Jackson as they were leaving the bus station in the City of Binghamton, Broome County and searched defendant's person. The search revealed that he was carrying cocaine and marihuana. Defendant was charged with criminal possession of a controlled substance in the third degree, criminal possession of a controlled substance in the fourth degree, and unlawful possession of marihuana, a violation.
Defendant moved to suppress the seized evidence and requested a Darden hearing. After conducting the Darden hearing, County Court denied the suppression motion, finding that the CI's communications to police officers were in fact made, were reliable, and were sufficient to establish probable cause. Following a jury trial, defendant was convicted as charged. He was sentenced as a second felony offender to concurrent prison terms of six years for the convictions of criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fourth degree, followed by three years of postrelease supervision, and to a one-year conditional release on the conviction for unlawful possession of marihuana. Defendant appeals.
We reject defendant's contention that probable cause to support issuance of the search warrant was lacking because the CI's reliability and basis for knowledge were not proven. Probable cause may be based upon hearsay information obtained from a CI so long as police officers "establish that the [CI] had some basis for the knowledge he [or she] transmitted to them and that he [or she] was reliable" (People v Bigelow, 66 NY2d 417, 423 [1985]; see People v Hetrick, 80 NY2d 344, 348 [1992]; People v Bell, 299 AD2d 582, 583 [2002], lv denied 99 NY2d 555 [2002]). Here, the warrant application was accompanied by a statement from the CI that was "affirmed under penalty of perjury" and submitted for in camera review. Under such circumstances, a CI's reliability and the basis of his or her knowledge need not be assessed, as the statement "is in and of itself sufficient to support the issuance of a search warrant" (People v David, 234 AD2d 787, 788 [1996], lv denied 89 NY2d 1034 [1997]; see People v Hicks, 38 NY2d 90, 93-94 [1975]). As the statement is not contained within our record, we further note that our in camera review of the confidential minutes of the Darden hearing reveals that the CI had provided information to police in the past (see People v Rodriguez, 52 NY2d 483, 489 [1981]; People v Tyrell, 248 AD2d 747, 748 [1998], lv denied 92 NY2d 907 [1998]) and that the information that he provided was based on his firsthand observations and interactions with defendant — "[t]he most reliable" demonstration of the basis for a CI's knowledge (People v Bigelow, 66 NY2d at 423; see People v Douglas, 42 AD3d 756, 758 [2007], lv denied 9 NY3d 922 [2007]; People v Mantia, 299 AD2d 664, 665 [2002], lv denied 99 NY2d 617 [2003]).
We find no merit in defendant's contention that the warrant failed to provide a sufficiently particular description of defendant. As defendant argues, the warrant identified him only with the street name "Slime" and stated a height that was three or four inches shorter than his true height. However, defendant does not claim that the remainder of the physical description — which described his build, coloring and facial hair — was inaccurate. The warrant further described defendant by his association with Jackson, whose full name, date of birth and photograph were provided. The warrant application stated that the CI had identified a photograph of Jackson as a person whom he knew as Mill, that the CI had met Mill and Slime in Binghamton within the past two weeks and had seen them in possession of crack cocaine, and that both Mill and Slime kept crack cocaine hidden in the zipper area of the front of their pants. "While particularity of a search warrant is certainly required, '[t]his does not mean that hypertechnical accuracy and completeness of description must be attained'" (People v Thomas, 155 AD3d 1120, 1121 [2017], lv denied 31 NY3d 1018 [2018], quoting People v Nieves, 36 NY2d 396, 401 [1975]). A warrant is sufficiently particular where, as here, "from the standpoint of common sense, . . . the descriptions in the warrant and its supporting affidavits [are] sufficiently definite to enable the searcher to identify the persons, places or things that the [issuing court] has previously determined should be searched or seized" (People v Nieves, 36 NY2d at 401 [internal citations omitted]).[FN2]
We reject defendant's contention that his convictions are not supported by legally sufficient evidence and are against the weight of the evidence. Specifically, defendant contends that the People failed to prove beyond a reasonable doubt that he intended to sell the cocaine found in his possession, rather than keeping it for personal use, and further failed to prove the weight of the cocaine and that it was not altered while in police custody. The testimony of the People's witnesses established that a detective on the Task Force received information that Jackson and an individual whose street name was Slime would be coming to Binghamton by bus from New York City to sell cocaine. The detective obtained a warrant to search the persons of Jackson and Slime. At the specified time, the detective and his partner waited in a location at the bus terminal where they could see buses arriving, while other officers were stationed nearby. The detective and the partner watched as defendant and Jackson got off the bus together, collected their baggage and walked together toward the exit. The partner recognized Jackson based upon past encounters with him, and defendant's general appearance corresponded with the warrant's description of Slime. The detective and the partner advised the other officers by radio that defendant and Jackson were approaching, identifying them by their clothing. Defendant and Jackson were arrested as they left the terminal.
At the police station, the detective obtained defendant's full name and advised him that the detective had a warrant to search his person. Defendant denied "a couple of times" that he used the street name Slime. The search of defendant's person disclosed three cell phones and $304 in cash, as well as a hidden pocket in defendant's pants, located behind a small hole near the zipper, that contained baggies holding substances that proved to be cocaine and marihuana.
A captain of the detective division of the Broome County Police Department testified that he participated in the search of defendant and took photographs that were admitted into evidence of the cocaine found on defendant's person and the hidden pocket in his pants. The captain further identified photographs of two pairs of pants found in defendant's luggage, each of which also had hidden pockets in the zipper area. The captain described his training and experience in narcotics investigations and testified that, in his experience, drug users typically possessed paraphernalia for using drugs and small amounts of drugs, often found in their pockets, hands or sometimes in their mouths. The captain testified that users typically carried only small amounts of drugs and cash because they were likely to use whatever money they had to buy drugs and then use the drugs soon after purchasing them. Dealers, instead, typically did not carry paraphernalia for the use of drugs, but were likely to possess larger quantities of drugs concealed on their persons or in hidden compartments in their clothing, as well as one or more cell phones. Other police witnesses stated that the cocaine found in the hidden pocket of defendant's pants weighed 9.53 grams and described the processes by which the cocaine and marihuana were secured and tested.
Contrary to defendant's argument, County Court did not err in permitting the captain to provide expert testimony about the typical possession of drugs, cash and other items by drug dealers and drug users. This information was "beyond the ken of the average juror" and helpful to the jury in evaluating the issue of defendant's intent, and the captain did not opine on the ultimate issue of defendant's guilt or otherwise usurp the jury's fact-finding function (People v Hicks, 2 NY3d 750, 751 [2004]; see People v Casanova, 152 AD3d 875, 878 [2017], lvs denied 30 NY3d 948 [2017]; People v Berry, 5 AD3d 866, 867 [2004], lv denied 3 NY3d 637 [2004]; People v Davis, 235 AD2d 941, 943 [1997], lvs denied 89 NY2d 1010, 1013 [1997]). The jury was entitled to credit the uncontradicted testimony of the People's chain of custody witnesses and, as to defendant's claim that the People did not prove that the cocaine was not adulterated, "the aggregate weight of a controlled substance is determined by the weight of the substance which contains the drug, irrespective of the amount of the drug in the substance" (People v Mendoza, 81 NY2d 963, 965 [1993] [internal quotation marks and citation omitted]; accord People v Bellamy, 118 AD3d 1113, 1115 [2014], lv denied 25 NY3d 1159 [2015]). Viewing the evidence in the light most favorable to the People, we find that the proof was legally sufficient to support defendant's convictions (see People v Wheeler, 159 AD3d 1138, 1140 [2018], lv denied 31 NY3d 1123 [2018]; People v Garcia-Toro, 155 AD3d 1086, 1088 [2017], lv denied 30 NY3d 1115 [2018]; People v Wright, 283 AD2d 712, 714 [2001]; lv denied 96 NY2d 926 [2001]). A different verdict would not have been unreasonable if the jury had credited defendant's arguments that, among other things, his possession of rolling papers and a lighter at the time of his arrest was inconsistent with the expert testimony that drug dealers did not typically carry such paraphernalia. Nevertheless, viewing the evidence in a neutral light and deferring to the jury's credibility determinations, we find that defendant's convictions are not against the weight of the evidence (see People v Roulhac, 166 AD3d 1066, 1067-1068 [2018], lv denied 32 NY3d 1128 [2018]; People v Wright, 283 AD2d at 714; see generally People v Creech, 165 AD3d 1491, 1492 [2018]).
Finally, we reject defendant's argument that he did not receive the effective assistance of counsel because his trial counsel failed to call him to testify at trial. Defendant now contends that he could have offered testimony about his alleged substance abuse issues to counter the People's assertion that he was a drug dealer rather than a user. At trial, however, County Court asked defendant whether he wished to testify and noted that defense counsel had represented that he and defendant had discussed the issue. Defendant did not disagree, and twice stated that he did not wish to testify. Beyond that exchange, "we do not know the circumstances under which the decision was made not to have defendant testify at trial and, therefore, it is outside the scope of this record" (People v Borthwick, 51 AD3d 1211, 1216 [2008], lv denied 11 NY3d 734 [2008]; see People v Dozier, 94 AD3d 1226, 1228 [2012], lv denied 19 NY3d 996 [2012]). In any event, whether a defendant will testify at trial is an inherently strategic choice, made by the defendant with the assistance of his or her trial counsel (see People v Borthwick, 51 AD3d at 1216). Here, pursuant to a Sandoval compromise, the People would have been permitted to cross-examine defendant about a prior felony conviction and a prior misdemeanor if he had testified. As defendant failed to show the absence of a strategic reason for the failure to call him to testify, we find that he was not denied the effective assistance of counsel (see People v Dozier, 94 AD3d at 1228; People v Coleman, 296 AD2d 766, 768 [2002], lv denied 99 NY2d 534 [2002]).
Mulvey, Devine and Aarons, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: A detective testified that the Broome County Task Force is a combined special investigations unit made up of members from several agencies.

Footnote 2: Defendant's related argument that the purported deficiencies in the warrant deprived police of probable cause to arrest him is unpreserved for appellate review (see People v Cooley, 149 AD3d 1268, 1271 [2017], lvs denied 30 NY3d 979, 981 [2017]).